IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SECURE AXCESS, | § § § | Civil Action No. 6:13-cv-780 |
| Plaintiff, | § § | JURY TRIAL DEMANDED |
| v. | § § | |
| CADENCE BANK, NATIONAL ASSOCIATION, | § § § | |
| Defendant. | § | |

**DEFENDANT CADENCE BANK, NATIONAL ASSOCIATION'S
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

Defendant Cadence Bank, National Association ("Cadence") respectfully moves the Court under 28 U.S.C. § 1404(a) to transfer this action to the U.S. District Court for the Northern District of Alabama ("Northern District of Alabama").

I.     INTRODUCTION

Secure Axcess, LLC ("Secure Axcess") is a patent holding company that does not appear to manufacture or sell any products. Secure Axcess alleges that Cadence's "use of website authenticity," including the use of a "Login Image and Phrase," infringes U.S. Patent No. 7,631,191 ("the '191 patent"). But Secure Axcess' allegations are not in any way related to the Eastern District of Texas. Secure Axcess does not have any legitimate presence in this district. None of its employees live in this district, its principal office is in another state, and its only alleged connection to Texas is a "virtual office" that it acquired less than two months before it filed its first lawsuit in Texas related to the '191 patent. The inventors of the '191 patent do not reside in Texas and never have. The Cadence website authentication technology that allegedly

1

infringes Secure Axcess' patent was not designed or developed in Texas. The known Cadence employees with knowledge of the function, structure, and operation of the allegedly infringing technology do not reside in Texas. Further, the documents and related information describing how the allegedly infringing website authentication feature operates are not maintained in Texas.

Rather, the relevant documents, people, and actions giving rise to this suit are based in Alabama and Mississippi. Cadence is headquartered in Birmingham, Alabama—in the Northern District of Alabama. The Cadence employee with specific knowledge regarding the creation, development, functionality, and production of the allegedly infringing "Login Image and Phrase" found on Cadence's website is located in Starkville, Mississippi, while the Cadence employee with specific knowledge regarding the marketing and management of the same is located in Birmingham, Alabama. The Cadence equipment and servers that control and manage the "Login Image and Phrase" found on Cadence's website are located in Starkville, Mississippi. Documents and information relating to the creation, development, functionality, marketing, or production of the allegedly infringing "Login Image and Phrase" on Cadence's website are located in both Birmingham, Alabama and Starkville, Mississippi.

Secure Axcess will likely argue that this case should not be transferred from the Eastern District of Texas in part because Secure Axcess has filed other infringement suits here and this Court has already construed certain terms of the '191 patent, but the case law is clear that these are insufficient grounds for denying a proper request for transfer.

## II. FACTS

### A. Neither Secure Axcess Nor Cadence Has Any Significant Connection to the Eastern District of Texas

#### 1. Secure Axcess' Lack of Contacts with the Eastern District of Texas

Secure Axcess is a patent holding company that does not sell or produce products in

Texas or anywhere else in the United States. Rather, based on representations from its website, Secure Axcess' principal business activity appears to be filing patent infringement lawsuits. (*See* Affidavit of Gregory C. Scaglione ("Scaglione Aff."), ¶ 3 (Exhibit 1) (stating, "Secure Axcess is dedicated to monetization and management of Internet security patents")).

Further, Secure Axcess alleges in its Complaint that it has "its principal place of business in Plano, Texas." (Filing No. 1, ¶ 2). Publicly available information seems to contradict this statement, however. A search on the Texas Secretary of State's website for "Secure Axcess, LLC" revealed that Secure Axcess filed a Public Information Report for 2013 showing that its "Principle [O]ffice" is located at "2323 S 171ST STREET, STE 106 OMAHA NE 68130." (*See* Scaglione Aff., ¶ 4 (Exhibit 2)). Additionally, in the signature block of its Complaint, Secure Axcess lists its Texas address as follows: "555 Republic Dr., Ste. 200 Plano, Texas 75074." (Filing No. 1, p.7). However, that address does not appear to represent a place where Secure Axcess actually conducts any business in Texas, but rather is merely a "Virtual Office." (*See* Scaglione Aff., ¶ 5 (Exhibit 3) (noting that the stated address is the "Central Plano Virtual Offices")). Further, the contract Secure Axcess entered into confirms that the agreement was for a "virtual office" based on lease terms which state that the agreement is "not a lease or rental agreement" and that Secure Axcess did not receive "any interest in real property." (*See* Scaglione Aff., ¶ 6 (Exhibit 4, p. 3, ¶ 11)). Secure Axcess did not obtain its "virtual office" in Plano until approximately two months before it filed its initial lawsuit involving the '191 patent in the Eastern District of Texas. (*See id.* at Exhibit 4, p. 1; *Secure Axcess, LLC v. Bank of America Corp. et al*, No. 6:10-cv-670, Filing No. 1 (E.D. Tex. 2010) (case filed in December 2010)).

Secure Axcess also does not appear to have any employees in the Eastern District of Texas. On its website, Secure Axcess lists four employees under the moniker "Our Professional

Staff": Gerald C. Korth, A.J. Bahou, Alan Carlson, and John Gaukel. (*See* Scaglione Aff., ¶ 7 (Exhibit 5)). Public records show that not one of these employees resides in the Eastern District of Texas. (*See id.* at ¶ 8 (Exhibit 6) (showing Gerald C. Korth resides in Omaha, NE); *see also id.* at ¶ 9 (Exhibit 7) (showing John C. Gaukel resides in Omaha, NE); *see also id.* at ¶ 10 (Exhibit 8) (showing Andre J. Bahou resides in Tennessee); *see also id. at* ¶ 11 (Exhibit 9) (showing Alan Leroy Carlson resides in Lago Vista, TX, which is not in the Eastern District)).

Further, a search of the Plano Chamber of Commerce's website did not return results for "Secure Axcess." (*See* Scaglione Aff., ¶ 12 (Exhibit 10)). Neither did a search for "Secure Axcess" return any search results for the Dallas Better Business Bureau website, which serves the Plano area. (*See* Scaglione Aff., ¶ 13 (Exhibit 11)).

### 2. Cadence's Lack of Contacts with the Eastern District of Texas

Cadence is a regional bank. (Affidavit of Dann Richard Lee ("Lee Aff."), ¶ 3). Cadence is a national banking association, organized and existing under the laws of the United States of America, chartered and regulated by the Office of the Comptroller of the Currency of the U.S. Department of the Treasury, and headquartered in Birmingham, Alabama which is located in the jurisdiction for the United States District Court for the Northern District of Alabama (the "Northern District of Alabama"). (*Id.* at ¶ 4). Cadence has five (5) employees who live in the Eastern District of Texas (the "Eastern District of Texas"). (*Id.* at ¶ 5). The remainder of its more than 1,400 total employees do not live in the Eastern District of Texas. (*Id*).

Cadence does not conduct any relevant business operations in the Eastern District of Texas. (*Id.* at ¶ 6). Cadence does not have any bank branches, offices, or other facilities in this district. (*Id.* at ¶ 7). Cadence does not employ any individual who was or currently is involved in the creation, development, marketing, production, or management of the allegedly infringing

4

"Login Image and Phrase" on Cadence's website who lives in this district. (*See* Filing No. 1, ¶¶ 12, 15; *see also* Lee Aff., ¶ 8). Cadence does not maintain technical documents or other information relating to the creation, development, marketing, or production of the allegedly infringing "Login Image and Phrase" on Cadence's website in this district. (Lee Aff., ¶ 9). Cadence does not conduct any managerial or administrative functions in the Eastern District of Texas; rather, these activities mainly take place at Cadence's headquarters in Birmingham, Alabama, and in the other districts in which Cadence has bank branches. (*Id.* at ¶ 10).

Cadence has a total of nine (9) customers who live in the Eastern District of Texas. (*Id.* at ¶ 11). None of these nine customers use Cadence's online banking services. (*Id*). The initials,[1] counties, and zip codes for the nine customers in this District are as follows: (i) D.S.I. (Linden 75563); (ii) J.D. (Jefferson 75657); (iii) K.E. (Texarkana 75503); (iv) M.C. (Texarkana 75501); (v) M.H. (Marshall 75671); (vi) F.T. (Texarkana 75503); (vii) C.C. (Texarkana 75503); (viii) N.R. (Texarkana 75503); and (viv) J.K. (Texarkana 75501). (*Id*).

### B. The Events That Gave Rise to This Lawsuit Did Not Occur in the Eastern District of Texas

In its Complaint, Secured Axcess alleges that, "Cadence's use of website authenticity, including but not limited to the features referred to as the 'Login Image and Phrase,' infringes at least claim 1 of the '191 Patent." (Filing No. 1, ¶ 15). However, the facts, witnesses, and documents that would be relevant in determining the validity of such an allegation have nothing to do with the Eastern District of Texas.

#### 1. The Relevant Facts, Witnesses, and Documents Have No Ties to This District

The creation, development, and production of the allegedly infringing "Login Image and Phrase" on Cadence's website took place, and continues to take place, in Starkville, Mississippi,

---

[1] Initials have been used to maintain privacy of customers.

5

while the marketing and management of the same took place, and continues to take place, in Birmingham Alabama. (Lee Aff., ¶ 12). More specifically, the Cadence employee with specific knowledge regarding the creation, development, functionality, and production of the "Login Image and Phrase" found on Cadence's website is located in Starkville, Mississippi, while the Cadence employee with specific knowledge regarding the marketing and management of the same is located in Birmingham, Alabama. (*Id.* at ¶ 13). These individuals include: Billy Williams, Senior Vice President and Treasury Management Product Manager who resides at 102 Bay Meadows Drive, Starkville, Mississippi 39759; and Dann Richard Lee, Senior Vice President and Director of Retail Delivery who resides at 2012 Shandwick Terrace, Birmingham, Alabama 35242. (*Id.* at ¶ 14).

The Cadence equipment and servers that control and manage the "Login Image and Phrase" found on Cadence's website are located in Starkville, Mississippi. (*Id.* at ¶ 15). Documents and information relating to the creation, development, functionality, marketing, or production of the allegedly infringing "Login Image and Phrase" on Cadence's website are located in both Starkville, Mississippi and Birmingham, Alabama. (*Id.* at ¶ 16).

**2. The Inventors and Prior Assignees of the '191 Patent Do Not Have and Never Have Had Any Connection to the Eastern District of Texas**

The '191 patent lists five inventors: Elliott Glazer, Dirk White, David Armes, Fred Alan Bishop, and Michael Barrett. (*See* Filing No. 1-1 (Exhibit A)). A review of records publically available shows that none of these individuals lived in Texas at the time the '191 patent was issued, and none of these individuals lives in Texas now. (*See id.* (showing that none of the five inventors lived in Texas at the time the '191 patent was issued); *see also* Scaglione Aff., ¶ 14 (Exhibit 12) (showing Elliott Glazer currently resides in Apollo Beach, FL); *see also id.* at ¶ 15 (Exhibit 13) (showing Dirk White currently resides in Phoenix, AZ); *see also id.* at ¶ 16 (Exhibit

6

14) (showing David Armes currently resides in Phoenix, AZ); *see also id.* at ¶ 17 (Exhibit 15) (showing Fred Alan Bishop currently resides in Glendale, AZ); *see also id.* at ¶ 18 (Exhibit 16) (showing Michael Barrett currently resides in Berkeley, CA)). Further, the firm that prosecuted the '191 patent does not have offices in Texas. S*ee id.* at ¶ 19 (Exhibit 17).

Additionally, none of the prior assignees of the '191 patent are located in Texas. Prior to the time the '191 patent was assigned to Secure Axcess, it was owned by four different entities. Publicly available records show that not one of these prior assignees is located in Texas. (*See id.* at ¶ 20 (Exhibit 18) (showing American Express Travel Related Services Company, Inc. is located in New York, New York); *see also id.* at ¶ 21 (Exhibit 19) (showing that Wayverly Properties Fund, LLC was located in Wilmington, Delaware); *see also id.* at ¶ 22 (Exhibit 20) (showing that Intellectual Ventures Finvention LLC is located in Delaware); *see also id.* at ¶ 23 (Exhibit 21) (showing that Zamalchi Research L.L.C. is located in Delaware)).

## III.  APPLICABLE LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The party seeking transfer of venue must show good cause for the transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). The moving party must show that the transferee district is "clearly more convenient." *Id.* The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would

have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

Once that threshold inquiry is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I, 371 F.3d at 203; In re Nintendo, 589 F.3d at 1198; In re TS Tech, 551 F.3d at 1319*. Further, it should be noted that "[T]he Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer." *In re Nintendo*, 589 F.3d at 1200.

IV. **ARGUMENT**

Secure Axcess' case against Cadence has no real connection to the Eastern District of Texas. The events giving rise to this lawsuit, the evidence that will be required for Secure Axcess to prove its case, and the witnesses with relevant knowledge of the allegedly infringing "Login Image and Phrase" from Cadence's website are located in the Birmingham, Alabama and Starkville, Mississippi, not Texas.

### A. This Case Could Have Been Brought in the Northern District of Alabama

To show that a suit could have been filed in the transferee jurisdiction, a party need only make a prima facie showing of personal jurisdiction in the transferee venue. *See Balthasar Online, Inc. v. Network Solutions, LLC.*, 654 F. Supp. 2d 546, 551 (E.D. Tex. 2009). Cadence is headquartered in Birmingham, Alabama. (Lee Aff., ¶ 4). Cadence is therefore clearly subject to personal jurisdiction in the Northern District of Alabama and Secure Axcess could have filed its claims against Cadence there. *See* 28 U.S.C. §§ 1391(c) and 1404(a).

### B. Transfer is Proper Because the Witnesses and Evidence Are Concentrated in or Around the Northern District of Alabama

Because the relevant witnesses and evidence are concentrated in and around the Northern District of Alabama, and few or no convenience factors favor venue in the Eastern District of Texas, transfer should be granted. *See In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338, 1348 (Fed. Cir. 2009). While Secure Axcess has manufactured the façade of a Tyler, Texas presence, there are clear indications that Secure Axcess has manufactured such contacts for purposes of litigation only.

#### 1. Private interest factors favor transfer to the Northern District of Alabama

##### a. The relative ease of access to proof favors transfer

The relative ease of access factor favors transfer to the Northern District of Alabama because the vast majority of the documents and information relating to the allegedly infringing "Login Image and Phrase" are located in, or managed from, Alabama. The Federal Circuit has explained that a corporate party's relevant discoverable material is generally located at its headquarters. *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). Cadence is headquartered in Birmingham, Alabama, indicating that its "relevant discoverable material"

9

would be located there.

Further, the Federal Circuit recently stated that, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Nintendo Co., Ltd.*, 589 F.3d at 1199 (citations and quotations omitted). Dann Lee testified that, "[the d]ocuments and information relating to the creation, development, functionality, marketing, and production of the allegedly infringing 'Login Image and Phrase' on Cadence's website are located in both Starkville, Mississippi and Birmingham, Alabama." (Lee Aff., ¶ 16). Likewise, "Cadence does not maintain technical documents or other information relating to the creation, development, marketing, or production of the allegedly infringing "Login Image and Phrase" on Cadence's website in the Eastern District of Texas." (Lee Aff., ¶ 9).

Thus, because the relevant documents and other sources of proof are not in Texas, but rather are primarily concentrated in Alabama, the Northern District of Alabama would be a "far more convenient" forum for this suit than the Eastern District of Texas.

### b. The concentration of non-party witnesses and availability of compulsory process favors transfer

This factor weighs in favor of transfer when more third-party witnesses reside within the transferee district than in the transferor district. *See In re Volkswagen II*, 545 F.3d at 316. There appear to be **zero** non-party witnesses that reside in Texas. Not one of the inventors of the '191 patent lives in Texas. (*See* Scaglione Aff., ¶¶ 14-18 (Exhibits 12-16)). Further, the firm that prosecuted the '191 patent does not have offices in Texas. (*See* Filing No. 1 (Exhibit A); *see also* Scaglione Aff. at ¶ 19 (Exhibit 17)). Finally, not one of the prior assignees of the '191 patent is located in Texas. (*See* Scaglione Aff. at ¶¶ 20-23 (Exhibit 18-21)). In contrast, because the creation, development, and production of the allegedly infringing "Login Image and Phrase"

on Cadence's website took place, and continues to take place, in Starkville, Mississippi, and the marketing and management of the same took place, and continues to take place, in Birmingham Alabama, it is more likely that any third party witnesses who will be required to testify in this case will be from Alabama, not Texas. (*See* Lee Aff., ¶ 12). Any third-party witness living in Alabama would most likely be subject to the Northern District of Alabama's subpoena power pursuant to Fed. R. Civ. P. 45(c).

### c. The cost of witness attendance favors transfer

As it relates to this factor, the Federal Circuit has stated, "[t]he convenience of the witnesses is probably the single most important factor in transfer analysis." *In re Genentech*, 566 F.3d 1343. Two of the most important witnesses for Cadence live far from the Eastern District of Texas. (*See* Lee Aff., ¶¶ 13-14). The Cadence employee responsible for the creation, development, functionality, and production of the accused "Login Image and Phrase" would be required to travel over 400 miles to attend proceedings in the Eastern District of Texas, Tyler Division, but would be required to travel less than 150 miles to attend proceedings in the Northern District of Alabama, Southern Division. (*See id.*; *see also* Scaglione Aff., ¶ 24 (Exhibit 22)). The Cadence employee with specific knowledge regarding the marketing and management of the accused "Login Image and Phrase" would be required to travel over 500 miles to attend proceedings in the Eastern District of Texas, Tyler Division, but would be required to travel almost no distance to attend proceedings in the Northern District of Alabama, Southern Division because he lives in Birmingham, Alabama. (*See* Lee Aff., ¶¶ 13-14; *see also* Scaglione Aff., ¶ 25 (Exhibit 23)). It should also be noted that these are the distances Cadence would be required to transport relevant documents in this case as well.

Even for the plaintiffs, traveling to the Eastern District will require high costs to attend

trial and related proceedings. Secure Axcess has only one employee living in Texas, and even he lives in another district. (*See* Scaglione Aff., ¶¶ 8-11 (Exhibits 6-9)). Two of Secure Axcess' witnesses would need to travel from Omaha, Nebraska to get to the Eastern District of Texas, and the other from Tennessee. (*See id*). For one of Secure Axcess' principals, Andre Bahou, it would require a much shorter trip to get to Birmingham, Alabama as compared with Tyler, Texas. (*See* id. at ¶ 26 (Exhibit 24) (183 miles to Birmingham, 603 miles to Tyler)). Because it is unclear which of the former inventors, or prosecuting attorneys Secure Axcess will call to testify to support its case, Secure Axcess should be required to show how it would be more convenient for such parties to travel to Tyler, Texas than to Birmingham, Alabama. Finally, the prior assignees of the '191, all located in either New York and Delaware, are clearly closer to Birmingham, Alabama than to Tyler, Texas, and it would therefore be more convenient for these non-party witnesses to travel to Birmingham for trial and related proceedings. (*See id.* at ¶ 20-23 (Exhibits 18-21)). Thus, the convenience of the witnesses factors weighs in favor of transfer.

### d. Judicial economy and all other practical issues favor transfer

The "judicial economy" factor is only relevant in "rare and special circumstances" and therefore this factor is most often neutral. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003). No such rare or special circumstances are presented here. The case is in its early stages, discovery has not begun, and no other risks of delay or prejudice are likely. Further, Secure Axcess' choice to sue numerous unrelated defendants in this forum cannot "create" judicial economy. *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010). Finally, the fact that this Court has considered the '191 patent before is not a sufficient ground to avoid transfer where the transferee court would be "clearly more convenient." *See In re Morgan Stanley*, 417 F.App'x. 947, 949 (Fed. Cir. 2011) ("[t]he proper administration of justice may be

to transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation"); *In re Verizon Bus. Network*, 635 F.3d 559, 562 (Fed. Cir. 2011) ("To interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)").

2. **The public interest favors transfer to the Northern District of Alabama**

a. **The Northern District of Alabama has a far greater interest in this case than the Eastern District of Texas.**

As it relates to this factor, the Fifth Circuit has noted that, "[j]ury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See id.* In cases where no potential witnesses are residents of the court's state, favoring the court's location as central to all of the witnesses is improper. *See In re Genentech*, 566 F.3d at 1344.

Secure Axcess' ties to the Eastern District of Texas are pretextual. Its employees do not live in this district. It's only alleged connection to Texas is a "virtual office" that it acquired less than two months before filing its first lawsuit in Texas related to the '191 patent. Courts have held that such actions cannot result in an avoidance of transfer. *See, e.g., Uviado, LLC ex rel. Khan v. U.S. ex rel. I.R.S.*, 755 F.Supp.2d 767, 784-85, 789 (S.D. Tex. 2010) (granting motion to transfer in part because plaintiff's office was virtual and actual decisions to direct, control, and coordinate the business took place outside the district). The inventors of the '191 patent do not reside in Texas and never have. The firm that prosecuted the '191 patent does not have offices in Texas. The assignees of the '191 patent do not reside in Texas and never have.

There also is no "factual connection" between Secure Axcess' claims and Texas. Cadence does not have any bank branches, offices, or other facilities in this district. (Lee Aff.,

¶ 7). Cadence does not employ any individual who was or currently is involved in the creation, development, marketing, production, or management of the allegedly infringing "Login Image and Phrase" on Cadence's website who lives in this district. (*Id.* at ¶ 8). Cadence does not maintain technical documents or other information relating to the creation, development, marketing, or production of the allegedly infringing "Login Image and Phrase" on Cadence's website in this district. (*Id.* at ¶ 9). Cadence does not conduct any managerial or administrative functions in the Eastern District of Texas; rather, these activities mainly take place at Cadence's headquarters in Birmingham, Alabama, and in the other districts in which Cadence has bank branches. (*Id.* at ¶ 10). Cadence has a total of nine (9) customers who live in the Eastern District of Texas. (*Id.* at ¶ 11). None of these nine customers use Cadence's online banking services. (*Id*).

Cadence is headquartered in Birmingham, Alabama. (*Id.* at ¶ 4). The creation, development, and production of the allegedly infringing "Login Image and Phrase" on Cadence's website took place, and continues to take place, in Starkville, Mississippi**,** while the marketing and management of the same took place, and continues to take place, in Birmingham Alabama. (*Id.* at ¶ 12). The witnesses with knowledge of the same live in Alabama and Mississippi. (*Id.* at ¶¶ 13-14). The relevant documents are in Alabama and Mississippi. (*Id.* at ¶ 16). Further, Cadence employs hundreds of employees in Alabama and only employs five people in this district (*Id.* at ¶¶ 4, 5). Accordingly, this factor weighs heavily in favor of transfer.

### b. The remaining public interest factors are neutral

All federal courts face issues of congestion, thus, this factor is neutral. Likewise, both courts are familiar with federal patent law and there are no conflict of law issues involved here, so these factors are neutral.

## V. CONCLUSION

Cadence thus respectfully requests that the Court transfer this case to the United States District Court for the District of Northern Alabama.

Dated this 14th day of April, 2014.

        CADENCE BANK, NATIONAL ASSOCIATION, Defendant,

        By:*/s/Gregory C. Scaglione (w/permission by Allen F. Gardner)*
        Gregory C. Scaglione, *pro hac vice*
        KOLEY JESSEN P.C., L.L.O.
        One Pacific Place, Suite 800
        1125 S. 103rd Street, Suite 800
        Omaha, NE 68124-1079
        402-390-9500
        402.390-9005 (facsimile)
        Greg.Scaglione@koleyjessen.com

        Michael E. Jones
        State Bar No. 10929400
        Allen F. Gardner
        State Bar No. 24043679
        Potter Minton
        110 N. College, Suite 500
        Tyler, TX 75702
        mikejones@potterminton.com
        allengardner@potterminton.com
        (903) 597-8311
        (903) 593-0846 (facsimile)

        Tonya M. Gray
        State Bar No. 24012726
        tonyagray@andrewskurth.com
        ANDREWS KURTH LLP
        1717 Main Street, Suite 3700
        Dallas, Texas 75201
        Telephone: 214-659-4400
        Telecopier: 214-659-4401

        Attorneys for Defendant.

## CERTIFICATE OF CONFERENCE

This is to certify that John V. Matson on behalf of Gregory C. Scaglione, counsel for Defendant Cadence Bank, National Association, met and conferred by telephone with Derek Gilliland, counsel for Plaintiff Secured Axcess, LLC, on the 14th of April, 2014 in compliance with LR CV-7(h). Counsel for Plaintiff has indicated that the Motion is opposed.

*/s/Gregory C. Scaglione (w/permission by*
*Allen F. Gardner)*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 14, 2014.

*/s/ Allen F. Gardner*